LAWRENCE, Judge,
dissenting.
I respectfully dissent from the majority opinion reversing Mundy’s several felony convictions. The instant case is controlled by this court’s opinion in Kott v. State, 518 So.2d 957 (Fla. 1st DCA 1988); the majority fails to address this case. We said in Kott: “In determining whether an abuse of discretion warranting reversal has occurred, an appellate court must consider several factors,” including “whether the motion [to dismiss counsel] was timely made,” and whether “the conflict was so great as to result in a total lack of communication preventing an adequate defense.” Id. at 958 (affirming defendant’s conviction and holding that, where the defendant proceeded to trial with no additional attempt to dismiss his counsel or request self-representation, the denial of defendant’s motion to dismiss counsel at most was harmless). We moreover said in Kott:
The most important circumstance militating in favor of affirmance, however, is the fact that the appellant proceeded to trial with his court-appointed counsel, and made no additional attempt to dismiss counsel or request self-representation. Similarly, there is no evidence in the record of any conflict or lack of communica *1316 tion during the trial between appellant and his attorney that would support a finding that the appellant did not receive an adequate defense.
Id. (emphasis added). The instant record contains no evidence supporting a lack of communication that would support a finding that the appellant did not receive an adequate defense; the majority makes no finding that Mundy’s defense was inadequate. I would find that the trial judge properly exercised his discretion in refusing to grant Mun-dy’s motion.
The facts are these. Mundy was appointed private counsel following withdrawal of the Public Defender’s Office due to a conflict of interest with a co-defendant. This appointment occurred more than six months prior to trial. Mundy delayed complaining about his attorney until the day before trial. A lengthy discussion of this issue with the trial judge at a pretrial hearing established that Mundy had an unusually high regard for another attorney who had been appointed to represent him on similar charges in neighboring Bay County, and that he wanted the Bay County attorney in both cases. Mundy never suggested that he wanted to represent himself. The trial judge, after finding that Mundy’s complaints were unfounded, denied Mundy’s request for discharge of counsel. Mundy, during the course of a three-day trial which commenced the following day, failed to raise the issue again. Neither did Mundy raise the issue at the sentencing hearing six weeks later. Kott therefore demands affir-mance.
Kott complained about his court-appointed counsel under circumstances like those at bar. Kott asked for substitution of counsel because his trial counsel had failed to locate, investigate, and take statements from witnesses; faded to adequately prepare a defense, file pretrial motions, and inform him of the progress in the ease; and failed to provide adequate and effective assistance of counsel as a result of counsel’s extremely large case load. Kott also alleged that a conflict of interest existed on the part of his counsel, and that counsel’s assistance had been so ineffective that a complaint with the Florida Bar had been filed. Kott, when his motion was denied, failed to raise the issue again until his appeal. Mundy in the instant ease, like Kott, failed to raise the issue again following the denial of his initial request for substitute counsel. The instant record, like that in Kott, is devoid of evidence of lack of communication during the trial between Mundy and his attorney. Consistent with Kott, therefore, any error in the instant case was harmless. Id.
Harmlessness furthermore is plain because Mundy’s sole concern was to have the court appoint counsel of his choice (Chris Patterson, a Bay County attorney representing him in another case). The record is replete with evidence that Mundy wanted Mr. Patterson appointed in place of his existing attorney.[1] Mundy was fully aware of the benefits of *1317 representation by counsel. Mundy moreover is no stranger to the criminal justice system — he previously was convicted of at least nine felonies and nine misdemeanors. His lengthy criminal record formed the basis for his qualification as an habitual felony offender. Mundy’s right to self-representation was never an issue.
Alleged error furthermore is harmless beyond a reasonable doubt based on the evidence. The State’s evidence included Mun-dy’s detailed confession and the testimony of numerous witnesses, four of whom were victims of the robbery and kidnapping. The cashier testified that two white men entered the store shortly before closing time, one of whom wore two gold earrings in a single ear. They did not leave the store before it closed for the day. The description of one of them, although sketchy, was consistent with that of *1318 Mundy. Other witnesses testified that two masked men, each with a gun, emerged from hiding within the store and confronted the cashier, the assistant manager and two persons cleaning the store. They tied up all of the workers and locked them in a stock room. Their description of one of the masked gunmen, to the extent they were able to observe physical characteristics, was consistent with that of Mundy. Mundy’s confession described how he and his co-defendant decided to rob the Save-a-Lot store after driving to Chipley with the initial intention of robbing the Piggly Wiggly store. They decided to rob the Save-a-Lot store instead because, due to its location and isolation, it would have been an easier job. He related how they entered the store without masks, hid in the restroom, and later wore Halloween masks to hide their identities. After the store closed, one of the cleaning men came into the restroom and was immediately ordered to the floor. They subsequently tied up another cleaning man and all remaining workers and robbed them of $2436. Mundy admitted wearing two gold earrings in one of his ears when he first entered the store and was observed by the cashier. The state also presented an expert witness who testified that hair samples from a mask worn by one of the robbers was consistent with Mundy’s hair. Mundy offered no evidence or testimony at trial.
Mundy in sum failed to renew his objection to appointed counsel at trial; the record is devoid of evidence that Mundy received less than an adequate defense; and any alleged error is harmless beyond a reasonable doubt based on the overwhelming evidence of Mun-dy’s guilt. This case, like Kott’s, is one where “more serious Sixth Amendment concerns” are not implicated, and where Mundy, like Kott, after his motion was denied “accepted court-appointed counsel without any allegation of additional conflict or dissatisfaction.” Id. at 959.
The majority opinion has the deleterious effect of allowing a defendant to sit on his hands, wait for the jury’s verdict, wait for pronouncement of his sentence, and then sandbag the process. I would find that the trial judge properly exercised his discretion in denying Mundy’s motion and that any alleged error would be harmless beyond reasonable doubt. I would affirm the judgments and sentences entered by the trial judge.

. Pertinent portions of the colloquy between the trial judge and the defendant and his counsel which are fairly representative of this issue are as follows:
THE COURT: There were some other things that you said that Mr. Mundy wanted to bring up?
[[Image here]]
[DEFENSE COUNSEL]: Yes, sir. There are two areas, Your Honor, that Mr. Mundy has spoken to me about. I told him it’s a mighty late stage to be doing this, but he's very concerned about me continuing with the case because he has a high degree of confidence in Mr. Chris Patterson, and these cases are so parallel. He asked me to motion the Court for a continuance so that the case can be tried next week with Chris Patterson, then have me removed from the case and have Chris Patterson then try the case up here. And I told Mr. Mundy all I could do is bring that up before the Court.
[[Image here]]
THE COURT: Is Chris Patterson a court-appointed attorney?
[PROSECUTOR]: Yes, sir, Chris Patterson is a court-appointed conflict attorney due to the co-defendant situation with the public defender’s office.
[[Image here]]
THE COURT: Before we go any further, Mr. Mundy, to make sure you understand the scenario that we're in, the Public Defender’s office was initially appointed to represent you both in Bay Counly, on the charges in Bay County, and on the charges in Washington County. You are in the same circuit; the Public Defender’s office is the same Public Defender, obviously, that serves Washington and Bay County. But because they’re different counties, the venues are different. In other words, it is a different county where the crimes have taken place. And when the conflict arose with the Public Defender’s office, each respective Court that serves the county that the charges arose in appoints conflict *1317 attorneys to represent the individuals in that scenario. In this particular case, Mr. Powell was appointed for the charges in Washington County and apparently Mr. Patterson was appointed for the conflict in the charges in Bay County. The charges, the alleged crimes, or the crimes that you are alleged to have committed, apparently took place on different dates, I assume — I'm not that familiar with what happened, obviously— and so they’re not the same sequence, so to speak. In other words, they happened within minutes of each other or something like that. So even though they may be parallel in one sense, they're not in the other because they’re separate crimes. This jury is not going to hear about, I assume, the Bay County charges and the Bay County jury, I assume, is not going to hear about the Washington County charges; although they may; I don't know about that. I don’t know if the State up here filed a motion on that or not.
[[Image here]]
THE COURT: There is no basis for the Court to continue this case to appoint another lawyer to represent you at this point in time just because you’ve got cases in Bay Counly. So, if you’d like to say something ...
[DEFENDANT]: Yes. I'm — It's—It’s not the— the fact that I have similar cases in Bay County. It is that Mr. Powell has been my attorney for eight months, seven or eight months, and I’ve seen him one time and I've talked to him on the phone four or five times. And now all of a sudden, we've no defense strategy; I mean I haven’t talked to him about that. I didn't even have a suit for this county or this court. And I feel that, you know — -I mean it’s like I’m disassociated with him and I'm not ready to go to trial with him. I mean, you know, I’m not comfortable, you know, with what he's done with the case. I mean I haven’t even seen him; I don’t know what he’s done. I didn't get a discovery; I didn't get anything.
[[Image here]]
[DEFENDANT]: This is what I wanna say: I felt from the standpoint — from the attomey/client standpoint, I felt that the defense strategy- — because nothing was said — but I felt that it was "Sign a plea bargain to whatever” in Bay County. You know, that’s just — that's the way it looked; you know, we'll go through the preliminaries and you'll just sign a plea bargain, and nothing was really prepared for trial. It’s like, "Well, you go ahead and get your time in Bay County and we’ll get you a plea bargain here.”
[[Image here]]
[DEFENSE COUNSEL]: Your Honor, the witnesses have been deposed; I've analyzed discovery provided me by the State; I'm familiar with what they're going to offer. The emphasis has been a lot on the Motion to Suppress. I don't know what else I could do. But with my client sitting here beside me, he has literally spent more time with Mr. Patterson because of the numerous charges down there, and I feel like he feels like, you know, that maybe I should personally have spent more time with him, you know. And that’s his opinion and I respect it.
[[Image here]]
THE COURT: There's not a basis at this point in time to continue the matter to change attorneys unless there’s something more specific that comes up. I haven’t heard anything yet that just, you know, rises up and says, "I’ve got to postpone this matter and appoint another lawyer to represent you.”
[DEFENDANT]: I don't feel that adequate defense counsel was appointed in this case because the case — well, it was — took—on his part because he felt that I would take a plea bargain to run concurrent with the time that Bay County would give me if I was convicted down there. Then the trial was postponed. The motion was just filed recently because I had to make — I called up and said, “Look. We've gotta file this and this and this,” and I said, "File these motions and file for a suppression hearing.” And I mean, you know, it was ...
[[Image here]]
THE COURT: Okay. So for the record purposes, though, Mr. Mundy, what you've told me now still is not sufficient at this point in the proceedings to continue this matter and put another attorney in place. Like I say, there are remedies based upon Mr. Powell’s performance during the trial where you will be able to expound on it. But what you've told me right now, based upon the things you’ve told me — you’ve had contact with Mr. Powell; he has responded, at least to motions you've been requesting him to file; you have not advised him on the alibi witnesses that you now say you have; that was not communicated to him. The depositions have been taken and we're ready for trial. So in terms of the request to remove Mr. Powell from the case, I’ll deny that request at this time.
Okay. Was there another thing that you wanted to bring up?
[DEFENDANT]: No.